May it please the court, good morning, my name is Ethan Ballow and I speak for Charles Joo. We're going to watch my clock, I'll attempt to reserve two minutes of my time and I'll spend the remainder of our discussion this morning on the first claim for relief, which in essence has two parts. One, does established Supreme Court precedent establish, does it forbid a prosecutor from manipulating the evidence, from making false statements in order to secure a conviction? In short, may a conviction be secured by knowing deception? Two, in this case, did the prosecutor's three misleading and false statements to the jury matter? Did it have an effect? Did it deprive Mr. Joo of a fair trial? Based on the record presented to this court, we think it should answer both questions with a resounding yes. First, let's begin with honesty. It's not only a good policy, it's a rule. It's a rule that applies to every prosecutor, in every case, on every occasion. The Supreme Court started letting us know this in Mooney v. Hollihan, in United States v. Berger, decided in consecutive terms in 1935. It started with perjury cases, but through Darden v. Wainwright, the Supreme Court has made plain that a prosecutor must always tell the truth. They must do it in the presentation of evidence and in arguments. We've run through the Supreme Court precedent, which goes through Giglio and Brady, so much so that this court, just last year in 2008, described the rule of law as follows. A prosecutor's misleading and inflammatory arguments may violate a defendant's due process rights to a fair trial. It cites Darden for this proposition in the case of Sechrest v. Ignacio. Counsel, you have described the rule for us. And if we were here on direct appeal, you might have a more powerful argument. But we're not here on direct appeal, and we're going to have to view this through AEDPA, which is now going to require us to examine these Supreme Court, and in particular the Supreme Court holdings, in light of the California Court of Appeals decision in this case. You're going to have to find that there, that the rule is not only established, but that it is clearly established and that California should have known that it was in violation of these rules. I didn't hear anything in the quotation you just gave, which used the word may, that suggests that the California Court of Appeals here is in plain violation of some Supreme Court precedent. Well, it said a prosecutor's misleading statements may violate. So you have to establish what's misleading. You also have to, I agree, under 2254D1, you have to make a determination whether the California Court of Appeals used a contrary rule. And the contrary rule that we say, if you just look at their opinion they adopted, was as long as the prosecutor's statements are based on the evidence, that's fine, without regard to the truth. And I think so, the two-step process, and as far as establishing the rule, there's also a wealth of circuit authority. As the Court is aware, this Court may use circuit authority to determine how well established the rule is. And both the First, the Second, the Sixth, the Tenth, and the Eleventh Circuit are in, have established the same rule the Ninth Circuit has recognized from Berger, which says when a prosecutor manipulates or misstates the evidence, it violates due process. Darden says that directly. And the rule the California Court of Appeals applied was contrary to it. It says we don't look at what a prosecutor knew. We don't look at what was not presented to the jury. We just look at whether it's a fair comment on the evidence. And that's contrary to Berger. It's contrary to Darden. It's contrary to Donnelly. And it's contrary to those rules as reviewed by, in this circuit, Sechrest, Kajoyan, Bluford. I believe also Cruz-Ramirez speaks to it. And, of course, there are the other circuit cases which establish the same rule I'm speaking of. I also want to correct the record in our brief. I said it's an en banc opinion by this Court called Comer v. Schrierow. I miscited that case. I was referring to Judge Ferguson's opinion that had been vacated and that was not supported on en banc. And I apologize for my error. We withdraw our reliance on Comer for this appeal. If we look at the California Court of Appeals opinion, it makes sense why it's wrong. As the Supreme Court has also made plain, what's obvious is trials are searches for truth. And deception can never lead to the path of truth. That's what this Supreme Court precedent is. That's why it's so firmly established. Prosecutors, you know. At least on the prosecutor's side, which is the side you care about for this purpose. I mean, I think defense counsel's hands are a little freer. But the Supreme Court surely has spoken to the obligation of a prosecutor. I think Judge, Chief Judge Kuczynski got it right that it's never fair adequacy for a lawyer to lie in a court of law to any person, be it a judge or a juror, on any occasion. And it definitely applies to prosecutors because we're talking about a due process right that applies to the states through the 14th Amendment. Whereas the result of a defense lawyer lie would be different. It would be an ethical violation. It could be disbarment. It could be a host of matters which all practitioners must, you know, pay attention to. But as far as due process goes, that is a limitation on my colleagues who sit at this table here. And it's an incredibly important rule. And when you look at this case, it mattered. In this case, Mr. Ju, and I think the California Supreme Court, California Court of Appeals got it wrong too because they said everyone witnessed him commit these crimes. And that just wasn't true. He was witnessed to commit three trespasses. He never denied that. It was a question of intent. And he had a plausible defense that says, I was whacked out on a cocaine bender. Two of the three witnesses who he saw him trespassing described him in a way that was consistent with that. Well, being whacked out on a cocaine bender is not precisely a defense. The issue was whether when he trespassed, he had the intent to commit a felony when he entered. And there was he had made four statements. The statement that the prosecutor managed to get excluded and then lied about was the fourth of the statements. The jury actually heard one of them on tape. The people whose homes he broke into testified that he acted in a perfectly, what could be described within the context as a perfectly rational way when he attempted to break in. He didn't take the stand in his own defense and say anything that would suggest to the jury that he was in some sort of a trance. You can't take his lack of testimony now against him. That would violate Griffin. I'm not drawing any inference. I'm not drawing any inference from the fact. I'm not saying because he didn't testify, he's guilty. But if you look at this as a scale, you look at how the scale weighs. When a defendant puts in a defense that's plausible, that tends to suggest that it's a closer case than when he doesn't take the stand. I'm not suggesting that. On the issue of intent, he didn't have a fair chance. On the issue of intent, when Avila Cruz said he acted non culpis mentis and said it's not me, when Noble said he looked like he was drug addled and high on drugs and he knows drug dealers, and then when there was corroborating evidence as far as ATM receipts that he had money, as far as statements to the police under Miranda that he was crazy on drugs, he didn't have a fair chance to have that jury consider it. The other issue of whether he had cash on him is a separate story because there the prosecutor wasn't lying. No, but he was misstating or misleading the jury in a way that was unfair. Wow. And it's the same with the first thing when he introduced 1101B, I guess in Federal Court 404, the evidence. I mean, what struck me about this case is that the real problem was with the evidentiary rulings that were made that sort of allowed, at least in the eyes of the California courts, the prosecutor to make the statements. Why weren't the evidentiary rulings, which struck me as being fairly dubious, challenged? They were challenged, but we are here on habeas review, so I'm limited to one, constitutional challenges, and two, what was certified by Judge Bea and Judge Fischer. It says that defendants are allowed to put in a defense. That's clearly established Supreme Court authority. And Judge Bea and Judge Fischer limited these issues to the ones I present to you, which we believe have merit, and I think they do shape whether he had a fair chance or whether the prosecutor's statements took unfair advantage. I would seek relief in the petition based on the erroneous, arguably erroneous evidentiary rulings that led to the prosecution. Yes, that was challenged before the district court below. If I may reserve my final minute for rebuttal, I thank the Court. May I? Thank you. And we will hear for counsel from the State, or for the Warden. May it please the Court, Bea Dwin, California Deputy Attorney General for Matthew Cate. You didn't try this case, did you? No, I didn't. But I think, looking at the facts, it's clear that the prosecutor didn't lie, I think, on the statements that he made. And I'll go through the facts, and I think it's clear that I'll show that the prosecutor did not lie when he made his statement in closing. Here are the facts. The prosecutor was arrested, and the arresting officers took him to the hospital because he had a bloody lip. He was interviewed by Sergeant Dutta and stated that he'd been jumped by three men. He did mention he had been coming down from a cocaine high, and this statement was made into evidence. After he was treated at the hospital, Fishner was taken to the police station, and Fishner told Officer Stone they'd been looking through a rent-in apartment. He saw Arturo Noel's window screen was bent. He decided to try to bend it back as a nice gesture, was confronted by Noel, and then he was jumped by three men. The next day, he spoke to Detective Anderson and stated that he had been high on cocaine, was coming down, had been up for four days, and was resting in a parking lot because he was tired. And didn't the prosecutor say he didn't make such a statement? No, he didn't. I think if you read the entire statement, and I'll read it for you, it's really short, and I think it goes to show that Petitioner's conscious of guilt of the day he was arrested. Remember, the excluded statement comes the next day, and the whole statement is one paragraph. And the prosecutor stated, what did the defendant say? We have two statements from the man. One to Officer Stone, after he was arrested and brought to Devon Shire Station, and then we have one at the hospital before from Sergeant Dutta. According to the defense, this man was already, I suppose, sober at that time. That's why the officers aren't seeing any indication he's under the influence of drugs. The equivocation here is not his description of what he told Officer Stone and Sergeant Dutta. The problem is that he said we have two statements from this man, and there were actually three. But I think... Because he hasn't referred to the one from Officer Anderson. He's omitted the one that was contrary to what he wanted. That's a little selective, isn't it? No. I think, and this is the way the defense counsel argues it when he replies to it in his closing, is these statements are the go-to, the conscious of guilt. What he says the day he was arrested shows, when he lies the day he was arrested, shows a conscious of guilt. That's what the defense argued against him. The argument the prosecutor makes isn't at that point, these statements show consciousness of guilt. The argument the prosecutor makes is, but you didn't hear any of that in the testimony. He's making something of the bark that you didn't hear. The problem was there was a bark. It just got excluded. Now, the bark may have been the next day, but there was a bark. I mean, there's no doubt, but there was a statement that made reference to coming down from a cocaine high, and the prosecutor surely knew of its existence. And yet he's telling the jury, you didn't hear any of that. Well, that's true. They didn't hear it, but it didn't mean it didn't exist. I think the statement clearly refers to that day. And I also think that if you look at the prosecution's theory of motive and intent, the fact that he was coming down, which is the statement, not that I was locked down on drugs. I was locked down on drugs and coming down. It supports the prosecution's theory of motive, which was. Why did you move to exclude it? It's just he moved to exclude it because in trials. According to you, it supported his theory of the case. Why did he move to exclude it? Just during trial, you object to inadmissible evidence. And this was inadmissible evidence. But if you look at his argument, his theory of the motive intent was he was coming down from a drug high, and that's the statement. He was coming down from a drug high, was in a high drug area. He had no cash on him. He wanted and he was desperate to get more drugs, and that's why he had an intent and motive to commit the burglaries. Why was the statement to Detective Anderson excluded? Because it was hearsay? It was hearsay, but it didn't fit under California Evidence Code 791, because it really wasn't inconsistent with the hearsay he was trying to impeach, which was that he was there to look for an apartment. The fact that he was locked down on drugs and resting isn't really inconsistent with being there to look for an apartment. You could be coming down from drugs and looking for an apartment. That's not inconsistent. And it was excluded. If a police officer had testified that he only made two statements and he never said anything about coming down from a high, could the prosecutor have prevented him from offering that last statement to show that, in fact, the police officer was lying? I think here the statement isn't that he only gave two statements. Could I have a yes or a no answer if the police officer had testified in the same manner as the prosecutor argued, that there were only two or three statements and never said that he was high or on cocaine? Could the defendant have offered the statement that he did make that said he was high on cocaine to impeach that testimony? I think, again, the statement is clear. He's referring to these two officers. Could I have a yes or a no answer? But I will address that now. Assuming the officer says there were only two statements and he didn't say so, I think the prosecutor has an obligation to rebut that evidence because he can't knowingly present false evidence. But here I think he could. And could the defendant have offered that last statement to show that the police  I think on cross or cross-examining the officers. Could I have a yes or no? He could have presented that to rebut that. But I think In effect, wasn't the problem here is that the district attorney or the assistant district attorney was doing the same thing except it was worse because he was an unsworn witness. I think that's not the facts of the case here. If you look at his closing argument, the excluded statement, it corroborates or is consistent with the prosecution's theory of the case, which was he was coming down from a drug high. He had no cash on him. He was desperate to get drugs. And if you look at it, it's inconsistent with the petitioner's defense, which I was so whacked down on drugs I could not have formed the intent. Coming down from a drug high and arresting is much different than being so intoxicated that I'm fiddling with windows. Wait a minute. Part of the argument that's being objected to, and I have to say I find very troubling, is an argument you're trying to tell me is consistent with the prosecutor's case while the prosecutor's kind of denying it. You're saying the prosecutor wants to prove he's coming down from a drug high. But the point of this argument is that he didn't say any of that. Yeah, which shows a consciousness of guilt. And that's how the defense counsel in his closing saw this evidence. And if you look in opening closing argument and in final argument, the prosecution's theory of motive and intent was that he was coming down from a drug high. He had no cash on him. That's the second challenge statement. Drugs are bought with cash on the street. And he's desperate to get more drugs because he's coming down from a drug high. And that's the statement. This excluded statement is not he was intoxicated at the time of the burglaries, but that he was coming down, which is exactly what the prosecutor argued. And defense counsel argues the opposite, not opposite, but he argues that he was high on drugs at the time. And it's inconsistent with his theory of the case. I guess it brings me to the second claim in this conduct that prosecutors committed misconduct. At some point, I think you probably need to deal with the harmless error issue because that, in fact, appears to be what the district court used to resolve the case. The district court did not appear to seek to defend or sustain what the prosecutor did. I think that's the position you're taking here as well. Yes. It was harmless. And I think that the cases cited by the Petitioner in Miller v. Pate, Mooney v. Holohan, and Nepu v. Brady were all distinguished in Donnelly. Donnelly didn't find those cases to be in line. Donnelly said that there is a distinction that is important to make between normal trial error, which they found in that case to be harmless error, and isolated comments, billed in advance, not as evidence. And that's exactly what we have here, as opposed to egregious misconduct, which we have in Miller, Mooney, Nepu, and Brady. And I think that these words, egregious misconduct, I mean, if there was a constitutional violation, the issue is whether it's harmless or not. And I think that the question is that's what you've been asked to address. Yes. The comments were harmless. As I said, these were comments made in closing argument. They were billed in advance as not evidence. I think they were instructed so. The prosecutor reminded them in argument, and also a defense counselor reminded them in argument that what the prosecutor says is not evidence. Well, that would justify the prosecutor getting away with anything whatsoever in a closing argument. We know that's not the law. So I think we have to get down to the facts of this case. What is it that supports your contention that this statement could not have been material in moving the jury to the verdict that it rendered? And I think it goes back to my other argument, which is that, and it wasn't. It wasn't in dispute that he had been at some point high on cocaine. And this statement is that he was coming down on cocaine. And the only issue in this case was whether he was so whacked down on drugs of whether he can form intent. And that statement doesn't corroborate his statement that he was. Do you understand how absurd your argument is? I don't mean you personally, but in terms of the conduct of the State here. The State seeks to exclude evidence, which you are now arguing is helpful to it. And then the prosecutor, in effect, lies about the nature of the statements that he made, which was excluded because you say it was helpful to the government. I mean, doesn't that sound awfully peculiar? I see my time's up. I'm going to finish this off. Proceed. Proceed. I don't think it's absurd. It was during the course of the trial when he had the statement excluded. I think that to infer malicious intent that the prosecutor is saying that I got the statement excluded, I'm therefore going to argue its absence, is not what happened here. He – if you look at how the statement was objected to or how it was trying to be put forth, it was to impeach the defendant's statement to the other officer to impeach the credibility of the defendant in this case. It wasn't offered for the truth of the matter asserted. It wasn't inconsistent with what he said. The prosecutor objected to it because it wasn't admissible evidence. To infer that he is trying to exclude this evidence so he can argue the opposite I don't think is what happened in this case. If you read the colloquy and the statements made by the court and the prosecutor at the time of the objection, I think it's clear that he's – he is objecting to inadmissible evidence. I guess I think my time is up. I'll be quite brief. I want to make two corrections. One, I think the statement apprehends Mr. Jew's defense. He didn't say because he was on drugs he could not have formed the intent. It was a factual decision whether in real time did he form the intent. What he also said is he said something more than I was high on drugs. He said he was hallucinating and he heard his wife's voice. And when he heard his wife's voice, he went to these screens to look for her. And he heard his wife's voice and was hallucinating because he had been on a four-day bender and the drugs were affecting him. This court and Tanvi Runnels. He didn't testify to that. This is all the fourth statement that he made. This is correct. And his own expert testified that you can – if you're high on cocaine, it doesn't prevent you from forming a specific intent. Exactly. The jury had to decide whether he did or didn't. It didn't require that he be acquitted. It gave the jury a reason to doubt that he should be convicted. And that was up to a jury to decide. And it didn't say they had to find – if this evidence came in, they had to find for him he was entitled to an acquittal. No. The jury was entitled to consider whether they thought he merited an acquittal. And in Tanvi Runnels, this court sets forth the standard to evaluate a Donnelly claim. Did the prosecutor manipulate or misstate the evidence? Check. Two, did the trial court give a curative instruction? No. And that's important here because the prosecutor's argument, though false to us, was true to the jury. So they believed his argument that he never made these statements because they had no contrary evidence. They didn't know the truth. And a curative instruction by the trial judge recognizing the error would have been critical here. They didn't get one. Three, the weight of the evidence against the accused. And on the intent issue, it was very close. It was a contested case where a jury could have found he was hallucinating. A jury could have found he was affected by the judge and did not have the intent when he acted, that he was a trespasser only, and he should be convicted of trespassing. The jury didn't have that fair opportunity. Mr. Jew didn't have that fair opportunity. He asked this court to give it to him now. Thank you, Your Honor. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted. The next case on the calendar for argument is Song v. Holder. Thank you, Your Honor.
judges: Korman, Clifton, Bybee